**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br>MARCIA L. CALLAHAN,<br>        DEBTOR. | Chapter 11<br>Case No. 06-13513-WCH |
| MARCIA L. CALLAHAN,<br>        PLAINTIFF,<br>v.<br>UNITED STATES OF AMERICA,<br>        DEFENDANT. | Adversary Proceeding<br>No. 07-1141 |

**MEMORANDUM OF DECISION REGARDING
ORDER OF REMAND FOR CLARIFICATION**

**I. INTRODUCTION**

Pursuant to a Memorandum of Decision dated November 2, 2009 (the "Decision"),[1] I entered judgment in favor of Marcia L. Callahan (the "Debtor") on her Complaint against the United States of America (the "United States") declaring that certain federal tax liens for taxes assessed against James C. Callahan ("Callahan"), the non-debtor spouse of the Debtor, and recorded against property solely owned by the Debtor as the purported nominee and/or transferee of Callahan were invalid and finding that the United States could not trace tax liens on encumbered funds to the real property. On appeal, the United States District Court for the District of Massachusetts (the "District Court")

---

[1] *Callahan v. United States of America (In re Callahan)*, 419 B.R. 109 (Bankr. D. Mass. 2009).

1

identified two inconsistent passages of the Decision. Unable to reconcile them, the District Court remanded the matter for the sole purpose of clarifying this inconsistency. For the reasons set forth below, I clarify that use of the word "all" on the first line of page nine of the Decision was the result of an error and should instead have read "contributions in an unproven number and amount towards."

**II. BACKGROUND**

By way of brief background, after the Debtor and Callahan married in February, 1979, she acquired properties in Canton (the "Chapman Street Property") and Falmouth (the "Falmouth Property"), Massachusetts.[2] Over the years, Callahan engaged in various business ventures, and as a result, was assessed substantial tax liabilities as a responsible person for these ventures.[3] The first such assessment occurred on January 1, 1996, resulting in a lien in the amount of $153,867.92 on "all property and rights to property, whether real or personal, belonging to [Callahan]"[4] pursuant to 26 U.S.C. § 6321.[5]

It is undisputed that Callahan made at least some mortgage payments on both the Chapman Street Property and the Falmouth Property. Specifically, in the "Background" section of the Decision, I stated that:

---

[2] *Id.* at 115 (*citing* Exhibit 4), 116 (*citing* Exhibit 16), 127 (finding that the 121 Westwood Road Realty Trust failed for want of a contemporaneously executed schedule of beneficiaries).

[3] *Id.* at 118, 123. *See also* Joint Pre-Trial Statement, Docket No. 104 ("JPTS"), at ¶¶ II.9-10.

[4] 26 U.S.C. § 6321.

[5] *In re Callahan*, 419 B.R. at 119, 132. *See also* JPTS at ¶¶ II.9-10.

> The Debtor testified that she worked full time up until 1980, when she gave birth to her son. Throughout the 1980s the Debtor worked part-time at the Red Boot with no fixed job description. The Debtor earned no salary from 1990 through 2000. *During this period, approximately 1989 to 2001, Callahan made all mortgage payments on both the Chapman Street Property and the Falmouth Property and paid other various bills*. The Debtor testified that the monthly mortgage payments for both properties exceeded $4,500 from 1989 to 1996, and later exceeded $5,900 from 1996 to 2001. At trial, Callahan explained that he was happy to pay the mortgages from "monies we had" for the benefit of the Debtor and their children.[6]

Nonetheless, in my analysis, I concluded that:

> The United States, however, failed in its burden to *distinctly trace* any funds from Callahan to the Falmouth Property. Indeed, they essentially concede as much in their post-trial brief, and request an additional opportunity to do so. Instead, the United States has focused on the premise that Callahan was the only person who could have been making mortgage payments on the Falmouth Property, and to the extent that payments were made, it had to be with funds encumbered by a tax lien that they could trace if given the opportunity. Not only did the Debtor dispute that premise by stating that she made mortgage payments from funds taken from the equity of the Falmouth Property and Chapman Street Property, the United States was given that opportunity on June 20, 2009 and failed to show that Callahan made a single payment with encumbered funds. Evidence is now closed and the United States must stand on their proof, which in this case, is insufficient.[7]

Accordingly, I entered judgment in favor of the Debtor.

The United States appealed my judgment to the District Court. On February 10, 2010, Judge Young entered an order remanding this case back to me for clarification of an inconsistency arising out of the two above quoted passages, stating:

> The United States of America (the "United States") does not necessarily need to produce cancelled checks for each mortgage payment made by John Callahan ("Callahan") in order distinctly to trace encumbered funds to the property in question ("Falmouth Property"); other satisfactory evidence, such as testimony that he made all mortgage payments for the property, might well be sufficient. The United States, however, appears simply to have failed to carry its burden as analyzed by the

---

[6] *Id.* at 117 (footnotes omitted) (emphasis added).

[7] *Id.* at 132-133 (emphasis in original) (footnotes omitted).

3

Bankruptcy Court - but for one statement made by that court in the "Background" section of its opinion, viz. that "Callahan made all mortgage payments on both the Chapman Street Property and the Falmouth Property." Marcia L. Callahan v. United States, 419 B.R. 105, 117 (Bankr. D. Mass. 2009). That finding appears to contradict the court's later and more specific statements in the analysis section of the opinion that it is disputed whether Callahan made all mortgage payments on the Falmouth Property. Id. at 132. From reading the entire "Background" section as well as from the transcripts of Callahan's actual testimony, it appears that the Bankruptcy Court, although it said so, did not mean to make the finding of fact that Callahan made **all** the mortgage payments to the Falmouth Property. This Court, however, must not guess in such a situation.[8]

In light of the District Court's remand order, I afforded the parties an opportunity to file supplemental briefs, which they did on March 11, 2010.

## III. DISCUSSION

Having reviewed the supplemental briefs, the Decision, and the record in this case, particularly those portions of the record cited in the Decision, I concur with the District Court's assessment and find that I inadvertently stated that "Callahan made *all* mortgage payments" and did not intend to make such a factual finding. As explained below, that finding is unsupported by the record and is internally inconsistent with other findings made in both the "Background" and "Discussion" sections of the Decision.

Turning first to the portion of the trial transcript cited in support of the statement that "Callahan made all mortgage payments," Callahan testified as follows:

> Q. You paid the mortgage payments on 269 Chapman Street from 1989 until 2001, correct?
>
> A. I did or *we did*, or *whatever monies we had* we paid.
>
> Q. Well, your wife was not working outside the home at that time, you just

---

[8] *United States v. Callahan (In re Callahan)*, No. 09-12129-WGY (D. Mass. Feb. 10, 2010) [Docket No. 137] (emphasis in original).

4

> testified to that, correct?
>
> A.   Right.
>
> \* \* \*
>
> Q.   269 Chapman, sir.  You paid the mortgage payments on that property, correct?
>
> A.   I did pay them in that - - I gave her the money.  She paid them.  *We paid them*.  I paid them.  I paid - - they were paid for the benefit of my wife and my children on her house.
>
> \* \* \*
>
> Q.   There was a mortgage payment being made on the $250,000 mortgage on the Falmouth property, correct?
>
> A.   That's right.
>
> \* \* \*
>
> Q.   And Mrs. Callahan wasn't making that much money per month at the time, was she?
>
> A.   No, but it was *our money* and her house . . . .[9]

Contrary to the assertion that "Callahan made *all* payments," the uncontradicted testimony emphasized above indicates that the Debtor contributed some undetermined amount towards the mortgage payments between1989 and 2001.  Although I stated otherwise in the Decision, I explicitly recognized this fact by quoting Callahan's statement that "the mortgages [were paid] from 'monies we had'. . . " two sentences later.[10]

This view is also consistent with my analysis in the "Discussion" section of the Decision.

---

[9] Trans. June 30, 2009 at 72, ¶¶ 7-25; 73, ¶¶ 1-2; 77, ¶ 20 (emphasis added).

[10] *In re Callahan*, 419 B.R. at 117.

Notably, in the second paragraph of the subsection devoted to the United States' lien tracing theory, I stated that "[t]he United States argues that Callahan admitted that he made the mortgage payments on the Falmouth Property until 2001."[11] In the next paragraph, however, I expressly rejected the assertion that Callahan was the *only* person that could have been making mortgage payments.[12] Although I focused on the Debtor's testimony regarding post-2001 mortgage payments, a finding that the Debtor contributed to pre-2001 mortgage payments was implicit in my conclusion that the United States failed to distinctly trace a single payment to encumbered funds.[13]

Ultimately, the United States painted an incomplete portrait of the Debtor's and Callahan's financial history at trial. No evidence was offered about Callahan's income or assets except for a reference to his net worth being approximately $1,500,000 in 1978.[14] Although the Debtor testified that she worked full-time until 1980 and then part-time until 1989, the United States solicited no testimony regarding her income or assets for those periods.[15] Moreover, the United States offered no evidence indicating how or when the Debtor spent that income. While the parties stipulated that "[t]he Debtor earned no salary from 1990 through 2000,"[16] no information was provided about other

---

[11] *Id.* at 132.

[12] *Id.*

[13] *Id.*

[14] *Id.* at 114 (*citing* Trans. June 30, 2009 at 15, ¶¶ 9-18.)

[15] *Id.* at 117 (*citing* Trans. June 30, 2009 at 115, ¶¶ 14-16; 62, ¶¶ 21-25; 63, ¶¶ 4-9; 164, ¶¶ 16-25; 165, ¶¶ 1-5).

[16] JPTS at ¶ II.11.

sources, such as a deposit account, from which the Debtor may have paid the mortgage.[17] At best, the United States only demonstrated it unlikely that the Debtor paid the full amount of both the Chapman Street Property and the Falmouth Property mortgage payments from 1989 to 2001.[18] I note, however, that only the Falmouth Property is at issue in this adversary proceeding and there is no evidence that her income was insufficient to make only those payments.

Recognizing the dearth of evidence, the United States attempted to fill these gaps with inferences and assumptions, most notably, that Callahan paid all the mortgage payments because he was the only person capable due to the Debtor's unemployment or insufficient salary. When these inferences ran contrary to the parties' testimony, namely, that the Debtor contributed to the mortgage payments during the same period as Callahan, the United States' burden to distinctly trace its lien required specificity and quantification of his contribution. Nonetheless, the United States, after an opportunity to do so, conceded it could not by requesting additional post-trial discovery and a second trial.[19] Put simply, by failing to rule out that mortgage payments made between 1996, when the tax lien arose, and 2001 could be traced to the Debtor's income or assets or otherwise attempt to quantify those contributions, the United States could not, by default, distinctly trace encumbered funds used by Callahan to make the Falmouth Property mortgage payments.

---

[17] Trans. June 30, 2009 at 165, ¶¶ 21-23 ("A. But you had no *wage income* from 1989 to 2001, is that correct? Q. That is correct.") (emphasis added).

[18] *Id.* at 72-74; 77; 182-184; 187-188.

[19] *In re Callahan*, 419 B.R. at 124, 132-133.

## IV. CONCLUSION

In light of the foregoing, I will enter an errata changing the word "all" on the first line of page nine to "contributions in an unproven number and amount towards."[20]

*[signature: William C. Hillman]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: March 18, 2010

---

[20] The complete sentence should properly read: "During this period, approximately 1989 to 2001, Callahan made contributions in an unproven number and amount towards mortgage payments on both the Chapman Street Property and the Falmouth Property and paid other various bills."